GALPERIN v. LANGWALD.

1. DEEDS—FRACTIONAL INTEREST IN SHOPPING CENTER.

    Plaintiff purchaser of fractional interest in shopping center, subject to an agreement between the vendors permitting assignments of their interests but permitting the male parties thereto "to remain in active control and management of the project," *held*, not entitled either to rescission or conveyance of the fractional interest by an unconditional quitclaim deed thereof thereby requiring vendors to obtain *his* consent to mortgage, sell, or otherwise treat with the property, since such requirement would enable him to thwart defendants in the exercise of their powers of management and control.

2. ACCOUNTING—PURCHASER OF FRACTIONAL INTEREST IN SHOPPING CENTER.

    Plaintiff, purchaser of fractional interest in shopping center, who sought rescission of the purchase agreement or an unconditional quitclaim deed as evidence of his interest, and who obtained a decree according him a right to monthly accountings, *held*, not entitled to more relief than that provided in the decree so far as accounting is involved.

3. COSTS—BRIEFS—APPENDIX.

    Costs awarded to appellees upon appeal in chancery case are ordered to include costs of printing all briefs and appendix filed in the Supreme Court.

Appeal from Oakland; Adams (Clark J.), J.  Submitted June 6, 1961.  (Docket No. 1, Calendar No. 48,471.)  Decided September 22, 1961.

Bill by Joseph L. Galperin against Philip Langwald and others for rescission of agreements, or in

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur, Deeds § 25.
[3] 14 Am Jur, Costs §§ 61, 62.

the alternative, for a deed to a fractional interest in shopping center. Decree denying rescission and ordering deed given accompanied by power of attorney enabling defendant and his business associate to lease, mortgage, sell, and manage the property. Plaintiff appeals. Affirmed.

*Harold M. Shapero,* for plaintiff.

*Milton M. Maddin,* for defendants.

DETHMERS, C. J. Defendant Philip Langwald and wife entered into an agreement with Abe Green and wife for the purchase of land and the financing and constructing of a shopping center on it, the former to have a 1/3 and the latter a 2/3 interest therein. The agreement provided, in part, as follows:

"It is understood and agreed that the parties of the first part, as well as the parties of the second part, may transfer any portion of the interest in said project acquired by each to other parties. However, the sum total of the interests of each of the parties so transferred or assigned shall not exceed the interest as above designated, namely, parties of the first part 33–1/3% and the parties of the second part 66–2/3%. However, in the event of such assignments, it is understood and agreed that such assignments shall only be with the distinct understanding and agreement that the assignments will permit the male parties of the first and second parts to remain in active control and management of the project as herein set forth and that the parties of the first part and the parties of the second part will be the sole persons authorized to carry out the project and determine the policies as above set forth."

Thereafter the Langwalds, hereinafter called defendants, entered into an agreement providing for their "execution and delivery  *  *  *  of all neces-

sary instruments to vest a ' * * * 6/100 or 6 units"
in the land and shopping center in plaintiff, for which
he was to pay $30,000. The agreement was made
subject to the Langwald-Green agreement and to its
above quoted provision. Plaintiff made the specified
payment. Thereafter he demanded a quitclaim deed
from defendants to evidence his interest in the
property. They refused, but expressed their willing-
ness to execute and deliver to him an instrument
assigning the interest to him but making it expressly
subject to the mentioned provisions of the Langwald-
Green agreement. This plaintiff declined to accept.
During the course of financing operations for the
venture it developed that a considerably larger loan
than had been contemplated became available and
was obtained. The additional sum thus obtained was
given to the investors, in proportion to their shares,
thus reducing plaintiff's investment, a year or so
after it was made, from $30,000 to $22,800.

Eighteen months after the agreement was entered
into by plaintiff and defendants, plaintiff commenced
this action for rescission, or, in the alternative, to
compel delivery of a deed and for accountings.

The court, after trial, entered a decree, denying
rescission, but requiring defendants to furnish plain-
tiff with monthly accounts and to deliver to plaintiff
an agreement, to be executed by both parties, quit-
claiming the said interest to plaintiff, subject to the
terms of the Langwald-Green agreement, plaintiff,
by said agreement, to empower Langwald and Green,
irrevocably, to exercise full right, with respect to
the interests, to lease, mortgage, sell, manage and
operate and deal with the same without necessity of
obtaining execution of documents by plaintiff and
wife. Plaintiff appeals, contending that defendants'
failure to give him a quitclaim deed entitled him to
rescind or, in the alternative, that he is entitled to an
assignment free from the power of attorney fixing

the right in Langwald and Green to mortgage, sell, or otherwise treat with the property without plaintiff's consent. Defendants, in turn, say that such provision in the decree for power of attorney is essential to give effect to the above quoted provision of the Langwald-Green agreement to which plaintiff's rights were expressly made subject by the terms of his own agreement. Otherwise plaintiff could thwart them in the exercise of their powers of management and control.

Plaintiff does not claim that his interests and rights are not subject to the Langwald-Green agreement. The question, then, is its meaning. It seems to us, as it did to the trial judge, that to hold plaintiff entitled to an unconditional quitclaim deed, as the proofs show he was demanding, would be to unencumber plaintiff's interests from the limitations and provisions of the Langwald-Green agreement. If mortgaging, leasing or selling all or part of or in any other way treating with the property were to require execution of instruments or giving of consent by plaintiff, Langwald and Green would be deprived, to some measure at least, of the power to regulate and control the property without let or hindrance as in their agreement provided. To this, plaintiff was not entitled. It follows that rescission was properly denied. Neither is he now entitled to such a conveyance. Hence, his prayer for alternative relief must fail. We do not think the decretal provision for a power of attorney from plaintiff to Langwald and Green to "lease, mortgage, sell, manage and operate and deal generally with respect to" the property "free of the necessity of obtaining the execution of any documents in relation thereto by the said plaintiff and his wife" goes beyond the provision in the Langwald-Green agreement that they should, despite assignments of interests, "remain in active control and management of the project as herein set

forth and ' * * * be the sole persons authorized to carry out the project and determine the policies as above set forth." This is particularly true in view of the fact that the Langwald-Green agreement contained provisions for the sale by them, under certain circumstances, of the "project (land and buildings)".

Plaintiff made no showing of any sums due him from defendants. The decree provides for monthly accounts to be made to him. Failure to comply will entitle him to petition the court in this cause for appropriate relief in that connection. No relief beyond that provided in the decree is due plaintiff. The decree is affirmed. Costs to defendants, including costs of printing all briefs and appendix filed by them in this Court.

CARR, KELLY, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.